IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Starr Indemnity & Liability Company, | Civil Action No.: 4:12-cv-3271-RBH |
| Plaintiff, | **ORDER** |
| v. | |
| JCW Holdings, LLC; Extreme Fitness, LLC; Jason Weatherford; and Jonathan Weatherford, | |
| Defendants. | |

Plaintiff Starr Indemnity & Liability Company ("Starr" or "Plaintiff") filed this declaratory judgment action on November 15, 2012 seeking a judicial determination of no coverage. *See* Compl., ECF No. 1. This matter is before the Court on the motion for summary judgment of Starr, filed on December 4, 2013. *See* Pl.'s Mot., ECF No. 29. Defendant Jonathan Weatherford ("Jonathan") responded to the motion on January 7, 2014, *see* ECF No. 35, and Defendants JCW Holdings, LLC ("JCW"); Extreme Fitness, LLC ("Extreme"); and Jason Weatherford ("Jason") also filed a separate response on January 7, 2014, *see* ECF No. 36. A hearing was held before the undersigned on May 28, 2014. For the reasons stated below, the Court grants in part and denies in part Starr's motion for summary judgment.

## FACTUAL BACKGROUND

This case is a declaratory judgment action seeking a declaration as to whether there is coverage under a policy issued by Starr Indemnity to JCW Holdings, LLC related to the allegations of an underlying state action, *see Jonathan H. Weatherford vs. JCW Holdings, LLC, et al.*, Civil Action No. 2013-CP-21-1097. The Plaintiff in the underlying action, Jonathan Weatherford, alleges that he

was injured at a gym called "The Grind."  *See* State Compl., ECF No. 29-2 at ¶ 5–6.  He alleges that he was exercising on the gym's premises when he slipped from a pull up bar and fell, causing him "catastrophic" injuries.  *See id.*  He sued JCW Holdings, LLC and Jason C. Weatherford d/b/a "The Grind" in the state action.[1]

"The Grind," however, is not the name of the gym; rather, it is the name of an exercise class operated by Extreme Fitness, LLC.  Jason Weatherford Dep., ECF No. 29-3 at 9:14–25.  Extreme operates a health and fitness club, and is wholly owned by Jason.  *Id.* at 5:14–21, 17:4–6.  Extreme offers a class called "The Grind" as part of its business.  *See* Jason Weatherford Dep., ECF No. 37-1 at 9:14–10:4.  Jason also wholly owns JCW Holdings, LLC with his wife.  *Id.* at 17:1–3, 43:17–22.  JCW owns a strip mall that leases space to Extreme, along with several other entities.  For example, in 2008 there were four tenants: (1) Extreme, (2) JPT Imaging, (3) Young and Phillips Law Firm, and (4) Carte-Ay Salon.  *See id.* at 17:22–20:4.

The present dispute solely revolves around the insurance policy issued to JCW, and the only question in this case is whether the policy issued to JCW provides coverage with regard to the underlying state action.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of proving that summary judgment is

---

[1] Although Jonathan Weatherford and Jason Weatherford share the same last name, both of these parties state that they are unrelated.  *See* ECF No. 29-1 at 1; ECF No. 35 at 1.

appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In this case, the moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 845 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with fact sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. *See id.*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)). Moreover, the nonmovant's proof must meet "the substantive evidentiary

3

standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989).

## DISCUSSION

It is undisputed that Extreme did not have a policy of liability insurance coverage in its name at the time of the accident. *See* ECF No. 37-1 at 34:6–18. Extreme is also not a named insured under the Starr policy, and it is not a named Defendant in the underlying state case. Defendants advance several theories as to why coverage is present for the defendants in the underlying state case.

There are three issues of coverage for this Court to determine: (1) coverage regarding the duty to defend; (2) coverage regarding the duty to indemnify; and (3) medical payments coverage. Based on the reasoning below, the Court denies Starr's motion for summary judgment regarding the duty to defend. The Court grants the motion with regard to any medical payment coverage. The Court also grants the motion for summary judgment that the policy did not insure the separate legal entity of Extreme Fitness, LLC for the incident. The Court further grants the motion for summary judgment to the extent Defendants seek coverage under an amalgamation theory. Finally, the Court denies the motion for summary judgment as to indemnity, as there is coverage for JCW and Jason but only in their capacities as a commercial landlord and manager for the commercial landlord, and there are presently questions of fact regarding the landlord's responsibilities as to Paragraph 7(d) of the underlying state court complaint which need to be determined by the jury in the underlying suit.

The Court will first set forth general principles of insurance law applicable to this matter, and then will address whether there is coverage.

**I.      General Principles**

"An insurer's obligation under a policy of insurance is defined by the terms of the policy itself, and cannot be enlarged by judicial construction." *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 520 S.E.2d 820, 823 (S.C. Ct. App. 1999) (citing *Nationwide Mut. Ins. Co. v. Commercial Bank*, 479 S.E.2d 524 (S.C. Ct. App. 1996)). Courts "must enforce, not write, contracts of insurance," and "must give the policy language its plain, ordinary, and popular meaning." *Id.* (citing *Fritz-Pontiac-Cadillac-Buick v. Goforth*, 440 S.E.2d 367 (S.C. 1994)). "[A]mbiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Id.* (citing *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 456 S.E.2d 912 (S.C. 1995)). "However, if the intention of the parties is clear, courts should not torture the meaning of policy language to extend or defeat coverage that was never intended by the parties." *Id.* (citing *Diamond State*, 456 S.E.2d 912). A party seeking coverage under a liability policy must be an insured under the contract of insurance. *Shelby Mut. Ins. Co. v. Askins*, 413 S.E.2d 855, 859 (S.C. Ct. App. 1992). Moreover, an insurance policy may contain exclusions, tailored to the business of the particular insured, designed to limit the insurer's risk exposure from hazards peculiar to that business. *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999) (quoting *Couch on Insurance* 3d, § 130:14 (1997)). "Although exclusions in an insurance policy are construed against the insurer, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition." *Id.* (citations omitted).

"[U]nder South Carolina law, '[q]uestions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the

5

[underlying] complaint.'" *Auto Owners Ins. Co. v. Pers. Touch Med Spa, LLC*, 763 F. Supp. 2d 769, 776 (D.S.C. 2011) (quoting *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009)). In South Carolina, the duty to defend is broader than the duty to indemnify. *Ross Dev. Corp. v. Fireman's Fund Ins. Co.*, 809 F. Supp. 2d 449, 457 (D.S.C. 2011). "If the underlying complaint creates a *possibility* of coverage under an insurance policy, the insurer is obligated to defend." *City of Hartsville*, 677 S.E.2d at 578 (citing *Gordon-Gallup Realtors, Inc. v. Cincinnati Ins.* Co, 265 S.E.2d 38 (S.C. 1980)) (emphasis added). As this Court has previously explained, this means that "the duty to defend is triggered where the underlying complaint includes *any allegation* that raises the possibility of coverage." *Auto-Owners Ins. Co. v. Newsome*, No. 4:12-cv-00447-RBH, 2013 WL 3148334, at *4 (D.S.C. June 19, 2013). An insurer whose duty to defend has been triggered by a lawsuit against the insured "is not justified in refusing to defend the entire case." *Town of Duncan v. State Budget & Control Bd.*, 482 S.E.2d 768, 773–74 (S.C. 1997); *see also Employers Mut. Liab. Ins. Co. v. Hendrix*, 199 F.2d 53, 59 (4th Cir. 1952); *Cincinnati Ins. Co. v. Crossmann Cmtys. of N.C, Inc.*, No. 4:09-CV-1379-RBH, 2013 WL 1282017, at *11 (D.S.C. Mar. 27, 2013) ("South Carolina law requires that a triggered insurer with a duty to defend the policyholder in a suit must defend the policyholder against all claims in that suit, even those claims that are not covered under the policy.").

For purposes of determining whether an insurer has a duty to defend, "the allegations in the [underlying c]omplaint must be applied to the policy in its entirety, which necessarily includes the exclusions section." *USAA Prop. & Cas. Ins. Co. v. Clegg*, 661 S.E.2d 791, 798 (S.C. 2008). However, the duty to defend is not "strictly controlled" by the allegations of the complaint; rather, it "may also be determined by facts outside the complaint that are known by the insurer." *Id.* If an

6

insurer has no duty to defend, it will know that it has no duty to indemnify. *See Allstate Indem. Co. v. Tilmon*, No. 1:13-00690-JMC, 2014 WL 1154666, at *5 (D.S.C. Mar. 21, 2014).

"An insurer's duty to defend is separate from its obligation to pay a judgment rendered against an insured." *Ross Dev. Corp.*, 809 F. Supp. 2d at 457 (citing *S.C. Med. Malpractice Liab. Ins. v. Ferry*, 354 S.E.2d 378, 380 (S.C. 1987). Under South Carolina law, a liability insurer's duty to indemnify is determined by the findings of the fact finder in the underlying case. *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388–89 (4th Cir. 2001) (citing *Jourdan v. Boggs/Vaughn Contracting, Inc.*, 476 S.E.2d 708, 711 (S.C. Ct. App. 1996)). In other words, "[t]here is no obligation to defend until an action is brought and no obligation to indemnify until a judgment against the insured is obtained." *See Howard v. Allen*, 176 S.E.2d 127, 129 (S.C. 1970).

As previously noted, the underlying state complaint only asserts allegations against JCW and Jason Weatherford d/b/a "The Grind." However, as the Court has explained, "The Grind" was merely an exercise class offered by Extreme. ECF No. 37-1 at 9:14–25. Jason owns both Extreme and JCW, and JCW leases space to Extreme where Extreme operates the gym and conducts "The Grind" class. *Id.* at 5:14–21, 9:14–10:4, 17:4–6, 43:17–22.

The disputed policy in this matter explicitly lists JCW Holdings, LLC as the sole named insured. *See* ECF No. 1-1 at 1. The Commercial General Liability ("CGL") coverage part states that, if the insured named in the declarations is an LLC, the LLC is an insured, along with its members, "but only with respect to the conduct of [its] business." *See id.* at 41. Moreover, managers are also insureds, "but only with respect to their duties as . . . managers [of the LLC]." *Id.* Finally, the policy explains that no person or organization is an insured "with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a

7

Named Insured in the Declarations." *Id.* at 42. Therefore, the key arguments by the Defendants attempt to establish either (1) that Jason qualifies as an insured in his individual capacity with regard to the gym's operations, or (2) that the "conduct of [JCW's] business" was in fact operating a gym. Defendants advance an "amalgamation of interests" argument in support of both of these theories, asserting that JCW, Extreme, and Jason were so commingled that they were essentially all involved in running the gym. Thus, they argue, the policy should cover the allegations of the underlying complaint.

The Court agrees with Plaintiffs, however, that this amalgamation argument fails to establish a genuine issue of material fact.[2] First and foremost, it is undisputed that JCW and Extreme were legally distinct entities. *See* ECF No. 37-1 at 16:21–25. Moreover, it is also undisputed that Extreme did not have its own liability insurance and was not a named insured on the policy. *See* ECF No. 37-1 at 34:6–18. Jason's actions in procuring the policy establish that he did not intend to procure coverage for risks associated with Extreme. The coverage sought in the application was "Lessor's Risk," and the business description for the insured was a "strip mall," not a gym. *See* Aff. of Sylvia Robinson, ECF No. 29-4 at ¶ 3; Application, ECF No. 29-4 at 4. Extreme Fitness was merely listed on the application as one of several tenants of the building; it was not a named insured. *See* Application, ECF No. 29-4 at 4. Jason denied on the application that JCW is a subsidiary of any entity or that it has any subsidiaries, *see id.* at 5, and he represented to the producing agent that Extreme was a separately organized legal entity, *see* Robinson Aff., ECF No. 29-4 at ¶ 5. Jason was informed during the application process that Extreme Fitness would need a separate policy of

---

[2] Even if there was some evidence, the Court questions the appropriateness of Defendants' amalgamation theory in this context, as was argued by Plaintiff in its Reply Brief at pages 8 and 9.

insurance.  *See* ECF No. 29-3 at 34:6–18.  He admits that he received a quote for coverage for Extreme, but that he declined it because he could not afford it.  *See id.*  He explained that Extreme intended to rely on its hold harmless or waiver agreements to protect itself from liability.  *See id.* at 30:1–4.

Defendants, however, argue that Jason used the gym to conduct JCW business.  They claim there is a factual dispute as to whether Jason co-mingled Extreme and JCW, such that an injury at the gym is "with respect to the conduct" of JCW's business.  Defendants note that at one point in his deposition, Jason testified he was Extreme's sole owner and officer, that it had no employees, and that he felt "[t]he gym and me was one."  *See* Jason Weatherford Dep., ECF No. 35-1 at 12:4–13, 13:4–8, 14:25–15:8, 17:4–6.  Moreover, he testified that there was no written lease or contract between JCW and Extreme, and JCW never charged Extreme rent.  *See id.* at 14:6–8, 17:15–18, 49:16–22, 58:4–8, 62:14–16.  At one point he also asserted that JCW was the source of funds that bought equipment for the gym, and helped pay for the gym's maintenance, upkeep, and workers.  *See id.* at 55:4–56:16, 58:18–25.  Defendants cite Jason's testimony that he purchased the JCW policy assuming that it provided liability coverage on the gym because he owned both the building and the gym.  *See id.* at 35:11–17.  Moreover, they cite his testimony that he was not told that the policy would not cover the gym, even though the agent knew JCW owned the gym's contents.  *See id.* at 46:22–47:15, 49:2–15, 57:8–17; Report, ECF No. 35-2; Binder, ECF No. 35-3.  They also point out that the policy specifically identified "health or exercise facilities – commercially operated" as part of JCW's underwriting information.  *See* Binder, ECF No. 35-3.  Defendants note that neither JCW nor Extreme had any business meetings, office meetings, or shareholders meetings.  *See* ECF No. 35-1 at 43:23–44:9.  Finally, they point out that when Jason applied for coverage, he testified he told

9

the agent that he wanted coverage for the business and property owned by JCW, and they argue that she was aware there was a health and fitness facility in operation at the building JCW owned. *See* Jason Weatherford Dep., ECF No. 37-2 at 45:10–19.

The Court finds that the evidence cited by Defendants is insufficient to create a genuine issue of material fact regarding amalgamation. The Court agrees with the Plaintiff that JCW is not an insured with respect to the conduct of Extreme under the terms of the policy, and that the policy does not provide coverage to Extreme. To hold otherwise would be to allow coverage for a risk that Jason specifically rejected. Jason explicitly declined an offer of liability coverage for Extreme. Moreover, the risk specified in the CGL coverage part was "Shopping Centers – buildings or premises not occupied by the insured (lessor's risk only)." *See* ECF No. 35-3. In the application, Jason represented that JCW does not provide recreational facilities, and that JCW is not active in any joint ventures and does not share employees with any entities. *See* Application, ECF No. 37-2 at 40. As Plaintiff correctly explained, the underwriting information describing a "health and fitness facility" was necessary for underwriting purposes so the insurance company would know the *type of property* covered and could estimate an accurate replacement cost. The mere fact that the types of businesses run by JCW's various tenants were listed on the policy does not mean that Starr intended to provide liability coverage for each of those separate business operations. JCW had multiple tenants, ranging from a gym, to a hair salon, to a law firm. Moreover, Jason's purported confusion about whether the JCW policy would cover Extreme's liability is questionable, as he specifically noted that he discussed separate liability coverage for Extreme with an agent. *See* ECF No. 37-1 at 34:6–18. He admitted that the agent did not give him any reason to believe that the JCW policy would cover Extreme. *Id.* at 35:2–10. Jason was provided a written quote but specifically rejected and declined CGL coverage

10

for Extreme Fitness at the same time he took out the JCW policy, which strongly negates his "assumption" that the JCW policy would cover claims like Jonathan's at Extreme Fitness where "the Grind" class was taking place. Furthermore, this "assumption" is particularly questionable in light of the fact that Jason indicated Extreme intended to rely on its hold harmless agreements in lieu of insurance if faced with any potential liability. *See id.* at 30:1–4.

Additionally, the Court finds that the operation of a gym did not constitute "the conduct" of JCW's business operations, as JCW's business was limited to owning and leasing a building, not operating a gym. Jason repeatedly testified in his deposition that Extreme owned and maintained all of the exercise equipment, and that Extreme upfit the leased space for use as an exercise facility and purchased the necessary equipment. *See* ECF No. 37-1 at 8:18–20; 13:17–21, 21:3–8, 22:11–9. He also acknowledged that JCW "does not operate a health or fitness club" and that JCW is "strictly the landlord and owner of the building." *Id.* at 9:5–10. Upon cross-examination, however, Jason was confronted with documentation indicating that he previously represented that JCW owns the contents of the building, and responded yes to the question "[i]sn't it a true statement that JCW owns the contents of the fitness center?" *See* Report, ECF No. 37-2; Weatherford Dep., ECF No. 37-2 at 45:15–47:15. Moreover, on cross examination he testified that Extreme may have paid for equipment and other expenses through funds obtained from a mortgage loan to JCW, and Extreme may have made some of JCW's mortgage payments. This contradiction establishes that there may have been some degree of commingling funds between these entities, but the Court finds that this falls short of establishing a genuine issue of fact as to whether JCW was actually operating a gym. Jason consistently represented that these entities were separate and maintained them as such. *See* ECF No. 37-2 at 62:17–63:15. Particularly unfavorable to Defendants' case is the fact that Jason specifically

11

indicated JCW had no subsidiaries, was not involved in any joint ventures, and did not provide any recreation facilities. *See* ECF No. 29-4 at 4, 9. Therefore, the Court finds that operating a gym was not "the conduct" of JCW's business operations. Construing the policy to cover liability for the gym's activities would constitute "torturing" the language of the policy to extend coverage which Jason specifically declined. *See MGC Mgmt.*, 520 S.E.2d at 823 (S.C. Ct. App. 1999).

Accordingly, the Court finds that this policy was intended to insure JCW alone with regard to its business as a commercial landlord. Therefore, the policy only covers the allegations asserted against JCW as a commercial landlord, and only covers Jason in relation to his involvement as a member and/or manager of JCW.

## II.    Duty to Defend

As previously noted, the Court found that there is no coverage with regard to the allegations related to Extreme's operation of the gym. JCW and Extreme were sufficiently distinct such that coverage is clearly not contemplated for these activities. Thus, to the extent the allegations of the underlying complaint relate to the operation of a gym, there is no coverage. Moreover, Jason is only covered in his individual capacity with regard to his duties as a member and/or manager of JCW. Coverage is excluded with regard to the allegations relating to the operation of the gym, which the Court finds solely involved Extreme, and Jason's involvement with that business.

However, as Court explained above, the duty to defend is broader than the duty to indemnify. The underlying complaint alleges at Paragraph 5 that the Plaintiff "slipped off [a] pull up bar and fell, causing his head to strike an unpadded brick or concrete wall adjacent to the pull up bar." ECF No. 29-2, at ¶ 5. Moreover, the Paragraph 7(d) sub-specification of negligence alleges that the

Defendants were negligent in "creating and/or allowing a dangerous and defective condition to exist at Defendants' premises." *Id.* at ¶ 7(a), (d).

The Court finds that Defendants have presented enough evidence to establish a genuine issue of material fact as to whether "the underlying complaint creates a possibility of coverage" under the insurance policy. *City of Hartsville v. S.C. Mun. Ins. & Risk Financing Fund*, 677 S.E.2d 574, 578 (S.C. 2009) (citing *Gordon–Gallup Realtors, Inc. v. Cincinnati Ins. Co.*, 265 S.E.2d 38 (S.C. 1980)) (emphasis added). The underlying action can be construed to sufficiently allege a lessor-liability claim against JCW Holdings. It alleges that JCW Holdings owns the property where the injury occurred, and created and/or allowed a dangerous and defective condition on its premises by failing to pad the brick or concrete walls. *See* ECF No. 29-2 ¶¶ 2, 5, 7(d). As the Supreme Court of South Carolina explained in *Byerly v. Connor*, "[i]n the absence of an agreement to the contrary, the lessor surrenders possession and control of the land to the lessee." 415 S.E.2d 796, 798 (1992). "After the premises are surrendered in good condition, the lessor is typically not responsible for hazardous conditions which *thereafter* develop or are *created by the lessee*." *Id.* (emphasis added). Although it is undisputed that Extreme and JCW had an unwritten lease agreement, *see* ECF No. 31-1 at 5:14–19, 14:6–8, it is unclear which entity was presumed to have control over the maintenance of the leased premises. Similarly, there is also a genuine issue of fact as to whether the alleged hazardous condition was created by the lessee or lessor. Jason testified at one point during his deposition that Extreme "upfit" the premises and determined the floor plan and placing of equipment. *See* ECF No. 37-1 at 22:6–25. However, at another place in his deposition he indicated that JCW provided the money to purchase the gym and for maintenance and upkeep of the gym. *See id.* at 56:1–14.

Because the duty to defend is invoked based on the allegations of the underlying complaint, the Court finds that Starr's motion for summary judgment on the duty to defend should be denied. The limited allegations above from the underlying Complaint can be said to sufficiently assert a claim for premises liability against JCW in its capacity as a commercial landlord. Although coverage is only present for this narrow issue, an insurer whose duty to defend has been triggered by a lawsuit against the insured "is not justified in refusing to defend the entire case," *Town of Duncan v. State Budget & Control Bd.*, 482 S.E.2d 768, 773–74 (S.C. 1997); *see also Employers Mut. Liab. Ins. Co. v. Hendrix,* 199 F.2d 53, 59 (4th Cir. 1952); *Cincinnati Ins. Co. v. Crossmann Cmtys. of N.C, Inc.*, No. 4:09-CV-1379-RBH, 2013 WL 1282017, at *11 (D.S.C. Mar. 27, 2013) ("South Carolina law requires that a triggered insurer with a duty to defend the policyholder in a suit must defend the policyholder against all claims in that suit, even those claims that are not covered under the policy."). Thus, Plaintiff must still continue to defend the entire underlying matter on behalf of JCW in its capacity as a commercial landlord and Jason in his individual capacity as a member and/or manager of JCW as a commercial landlord.

### III.    Duty to Indemnify

The Court notes, however, that the duty to indemnify will solely involve JCW's ultimate liability, or lack thereof, as a commercial landlord. A determination regarding the duty to indemnify would be premature at this stage though—and therefore summary judgment is inappropriate regarding indemnity—because a liability insurer's duty to indemnify is determined by the findings of the fact finder in the underlying case. *Ellett Bros.*, 275 F.3d at 388–89 (citing *Jourdan*, 476 S.E.2d at 711). Several factual questions would need to be resolved by the fact-finder in the underlying case. First, were the Defendants negligent under the Paragraph 7(d) sub-specification of negligence?

14

Furthermore, as noted in *Byerly*, while the lessor generally surrenders control of the premises to the lessee, was there an agreement to the contrary here regarding the lessor's maintenance of the tenant space? *See Byerly*, 415 S.E.2d at 798. Finally, was the alleged hazardous condition created by the lessor or the lessee? *See id.*

**IV.     Medical Payments Coverage**

The parties do not appear to seriously dispute whether there is medical payments coverage for Jonathan's injuries. The Starr policy specifically excludes medical payments coverage for bodily injury "to a person . . . injured while participating in any physical exercises . . . ." *See* ECF No. 1-1 at 40. In the Complaint, Plaintiff requested a declaration that Jonathan is not entitled to medical payments coverage under the Starr policy due to this exclusion, as he was injured while participating in physical exercise. *See* Compl., ECF No. 1 at ¶¶ 44–47. The parties did not address medical payments coverage in their briefing on summary judgment. However, Defendants do not appear to contend that medical payments coverage would apply to Jonathan's injuries. Accordingly, the Court grants summary judgment on this issue, and finds that medical payments coverage is excluded based on the language of the policy.

## CONCLUSION

The Court has thoroughly reviewed the entire record, including Plaintiff's Motion for Summary Judgment, Defendant Jonathan's Response in Opposition to Plaintiff's Motion, Defendants JCW, Jason, and Extreme's Response in Opposition to Plaintiff's Motion, Plaintiff's Reply to these responses, and the applicable law. For the reasons stated above, the Court grants in part and denies in part Plaintiff's motion.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's motion is **DENIED** with regard to the duty to defend. Plaintiff's motion is **GRANTED** with regard to any medical payment coverage, as the Court finds that medical payments coverage is excluded for Jonathan's injuries. Plaintiff's motion is **FURTHER GRANTED** with regard to whether the policy insured the separate legal entity of Extreme Fitness, LLC for the incident, as the Court finds that the policy does not insure Extreme. Plaintiff's motion is **FURTHER GRANTED** to the extent Defendants seek coverage under an amalgamation theory, as the Court finds that this theory lacks merit. Finally, Plaintiff's motion is **DENIED WITHOUT PREJUDICE** with regard to the duty to indemnify because it is premature and because there is coverage for JCW and Jason in their capacities as commercial landlord and manager for the commercial landlord, and there are presently questions of fact regarding the landlord's responsibilities, if any, which need to be determined by the jury in the underlying suit.

The Court is inclined to stay further proceedings in this case regarding indemnity pending the outcome of the state court case and factual issues therein. Therefore, the Court requests both counsel file a statement concerning their position regarding a stay. Also, both counsel should advise the Court regarding any disposition of the underlying state case.

**IT IS SO ORDERED.**

                                              s/ R. Bryan Harwell
                                              R. Bryan Harwell
                                              United States District Judge

Florence, South Carolina
June 23, 2014